```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                              FRANKFORT
```

ALMEDA WIREMAN,                     )
                                    )
    Plaintiff,                      )   Civil Action No. 3:06-13-JMH
                                    )
v.                                  )
                                    )   **MEMORANDUM OPINION & ORDER**
ERNIE FLETCHER, et al.,             )
                                    )
    Defendants.                     )

                \*\*    \*\*    \*\*    \*\*    \*\*

This matter is before the Court on three motions. Defendant Commonwealth of Kentucky, Transportation Cabinet ("Transportation Cabinet"), has moved to dismiss Plaintiff Almeda Wireman's claims against it under Rule 12(b) of the Federal Rules of Civil Procedure ("Rule 12(b)") [Record No. 12]. Defendant Ernie Fletcher, individually and in his official capacity as Governor of Kentucky, has filed motion to dismiss under Rule 12(b) [Record No. 13]. Also pending before the Court is Defendant Sam Beverage's motion to dismiss the claims brought against him in his individual capacity and in his official capacity as an Administrative Employee of the Transportation Cabinet [Record No. 20]. As all motions have been fully briefed, this matter is ripe for review.

## I. BACKGROUND

Wireman has been an employee of the Transportation Cabinet for seven years. During September and October of 2004, the Highway District Administrative Manager position in Jackson, Kentucky became available. Wireman claims that although she applied for and

was qualified for the position, she was passed over and the position was awarded to Billy Montgomery. According to Wireman, Montgomery did not possess the education and experience required for the position. She alleges that Defendants Fletcher and Beverage participated in a scheme to replace current employees with their political supporters and that they made the final decision to promote Montgomery, a Republican, based on his political affiliation. Wireman, a Democrat, asserts that the deal made by Fletcher and Beverage violated her First Amendment right to free speech and association and her federal due process rights. She claims that she was penalized for not actively supporting Fletcher's campaign. Based on Defendants' actions, she has levied claims against them pursuant to 42 U.S.C. § 1983. Wireman seeks compensatory and punitive damages and an injunction mandating that she be placed in the position of Highway District Administrative Manager with all back pay and benefits.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss under 12(b)(6), the Court views the evidence and the allegations presented in the light most favorable to the plaintiff. *Pfennig v. Household Credit Servs., Inc.*, 295 F.3d 522, 526 (6th Cir. 2002). The Court need only accept as true the plaintiff's factual allegations and "need not accept as true legal conclusions or unwarranted factual inferences." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.

1998). Dismissal is appropriate when a plaintiff cannot prove any set of facts that would entitle her to relief. *Kostrzewa v. City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001).

### III. DISCUSSION

*A. Wireman's § 1983 Claims Against the Transportation Cabinet and Fletcher and Beverage in Their Official Capacities*

In their motions, the Transportation Cabinet, Fletcher, and Beverage claim that Eleventh Amendment Immunity bars all claims against the Transportation Cabinet and all official capacity claims levied against Fletcher and Beverage.

*1. Eleventh Amendment Immunity*

It is settled law that the Eleventh Amendment precludes a state from being sued in federal court absent that state's consent to suit or waiver of immunity. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997). Equally well-settled is that Congress's passage of § 1983 did not abrogate the states' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000).

There is no dispute that the Transportation Cabinet is an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see* KRS § 12.250 (establishing the transportation cabinet within Kentucky's government); *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 152 n.2 (6th Cir. 1995) (holding that the plaintiff's claims against the Kentucky

Department of Transportation were barred by Eleventh Amendment immunity). Neither consent nor waiver has been given by the Commonwealth to satisfy an exception to the Eleventh Amendment. The claims brought by Wireman against the Transportation Cabinet are barred by the Eleventh Amendment; therefore, those claims will be dismissed.

    2. *Official Capacity*

In *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989), the Supreme Court, evaluating whether state agents could be sued under § 1983, held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. The Court concluded that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and, "[a]s such, it is no different from a suit against the State itself." *Id.; see Matthews v. Jones*, 35 F.3d 1046, 1049 n.14 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity.").

Wireman's claims against Fletcher and Beverage in their official capacities are the equivalent of a suit against the Commonwealth. Therefore, any claims against Fletcher and Beverage in their official capacities for monetary damages will be dismissed.

In her complaint, Wireman seeks "an injunction mandating that

4

the Plaintiff be installed as Highway District Administrative Manager with all back pay and benefits." (Compl. 6.) Relying on *Ex parte Young*, 209 U.S. 123 (1908), Wireman asserts that the Eleventh Amendment does not prevent suits for prospective injunctive relief against state officials who violate federal law.

*Young* carved out an exception to Eleventh Amendment immunity, holding that "the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Young*, 209 U.S. at 155-56). In *Green*, the Court explained that it has "refused to extend the reasoning of *Young*, however, to claims for retrospective relief." *Id.* "[T]he *Young* exception is limited to the award of prospective nonmonetary relief, [and] any claim for retroactive relief or damages is barred under the Eleventh Amendment." *Lawson v. Shelby County*, 211 F.3d 331, 335 (6th Cir. 2000).

Wireman alleges that Fletcher and Beverage engaged in conduct that violated federal law when they denied Wireman a promotion because she is a Democrat. She requests as relief that she be promoted and awarded all back pay and benefits. Thus, her request for monetary relief is clearly barred because remitting back pay and benefits to Wireman would require the "payment of funds from the state treasury," not from the personal resources of Fletcher and Beverage. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974). Her

5

request for the promotion, however, is a request for prospective injunctive relief that is not barred by the Eleventh Amendment. *See Rogers v. Haley*, 421 F. Supp. 2d 1361, 1370-71 (M.D. Ala. 2006); *see also Dotson v. Griesa*, 398 F.3d 156, 178 (2d Cir. 2005) (concluding that claim for equitable reinstatement was not barred by sovereign immunity); *Williams v. Kentucky*, 24 F.3d 1526, 1544 (6th Cir. 1994) (holding that reinstatement claim was not barred by Eleventh Amendment); *Dwyer v. Regan*, 777 F.2d 825, 836 (2d Cir. 1985) (finding that claim for reinstatement was not barred because "[r]einstatement is purely prospective injunctive relief that orders the state official to return the former employee to the state's payroll").

*B. Wireman's § 1983 Claims Against Fletcher and Beverage in Their Individual Capacities*

To recover under section 1983, Wireman must "show, among other things, that [Fletcher and Beverage] violated a right, privilege, or immunity secured to [her] by federal law." *Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir. 1990) (citing *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989)). Wireman asserts that Fletcher and Beverage engaged in a scheme to promote their political supporters and declined to promote her because of her political affiliation, which thereby violated her right to free speech, guaranteed by the First Amendment; her right to association, also guaranteed by the First Amendment; and her right not to be deprived of property without due process of

6

law, secured by the Fourteenth Amendment.[1]

> 1. *Qualified Immunity for Alleged Violations of Wireman's First Amendment Rights of Free Speech and Association*

Fletcher and Beverage claim qualified immunity protects them from Wireman's suit. Qualified immunity is "an affirmative defense that shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gean v. Hattaway*, 330 F.3d 758, 767 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Therefore, this Court must first examine whether Fletcher and Beverage violated Wireman's constitutional rights based on the facts alleged. *Gean*, 330 F.3d

---

[1] In her supplemental memo in opposition to Fletcher's motion to dismiss, Wireman refers to an August 24, 2006, court order from the Franklin District Court which she claims shows that Fletcher "plainly and clearly admitted the unlawful acts of hiring practices were inappropriate within the state merit system and distinctly stated he 'accepts responsibility for them.'" (Pl.'s Supplemental Memo in Opp'n to Fletcher's Mot. to Dismiss 3.) Wireman's reading of the court order is unsupported by the plain language of the order itself. The order reveals no admission by Fletcher that he personally deprived state employees of promotions due to their political affiliations. In any event, because Wireman's claims against Fletcher fail for other reasons, the Court's discussion of Fletcher's alleged personal involvement is limited to this footnote.

at 767. If a violation could be made out, the Court must then determine if, at the time of the alleged illegal act and in light of the case's specific context, the rights asserted by Wireman were clearly established. "'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)). If the law did not put Fletcher and Beverage on notice that their alleged conduct was clearly unlawful, dismissal based on qualified immunity is appropriate.

> a. Whether Denying Wireman a Promotion Based Upon Her Political Affiliation Is a Constitutional Violation

Fletcher asserts that Wireman did not have a protectable property right in her promotion; thus, her claim must fail. In *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), the Supreme Court, faced with the issue of whether "the First Amendment's proscription of patronage dismissals recognized in *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980), extends to promotion, transfer, recall, or hiring decisions involving public employment positions for which party affiliation is not an appropriate requirement," decided that it is immaterial that the employee have an entitlement to, for example, a promotion in order to assert that his or her First Amendment rights have been infringed. *Rutan*, 497 U.S. at 68, 72. The Court explained that even if an employee has no "right" to a governmental

8

benefit, "'there are some reasons upon which the government may not rely'" in denying that benefit because if it could deny a benefit "'because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited.'" *Id.* at 72 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Under *Rutan*, promotions based on political affiliation or support "are an impermissible infringement on the First Amendment rights of public employees." *Id.* at 75.

According to Fletcher, *Rutan* is distinguishable because the position Wireman sought, Highway District Administrative Manager, is a high-level position; therefore, even if Fletcher denied her the promotion because she is a Democrat, his actions did not violate her First Amendment rights. Citing to its decision in *Branti v. Finkel*, the *Rutan* Court noted that the analysis is not as simplistic as whether the position is a high-level position or a low-level position, but whether Fletcher has shown a compelling interest for violating an employee's First Amendment rights by establishing that "'party affiliation is an appropriate requirement for the effective performance of the public office involved.'" *Id.* at 71 n.5 (quoting *Branti*, 445 U.S. at 518). As his argument is limited to his single claim that the position of Highway District Administrative Manager is a high-level position, Fletcher has made no such showing that it can only be effectively performed by a Republican. Based on *Rutan*, Wireman has asserted a violation of

9

her First Amendment rights.[2]

        b. Whether Fletcher and Beverage's Alleged Conduct Was Clearly Established as a Constitutional Violation

Wireman relies on the 1990 *Rutan* decision for the proposition that denying an employee a promotion based upon the employee's political affiliation was clearly established as unconstitutional at the time of Fletcher and Beverage's actions in 2004. *See Rutan*, 497 U.S. at 75 ("We therefore determine that promotions, transfers, and recalls after layoffs based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees."). The Court must examine whether a reasonable official in Fletcher's position and a reasonable official in Beverage's position would understand that denying Wireman a promotion based on her political affiliation violated her rights. *See Gean*, 330 F.3d at 767.

"In inquiring whether a constitutional right is clearly established, we must 'look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.'" *Walton v. City of Southfield*, 995 F.2d 1331, 1335 (6th Cir. 1993) (quoting

---

[2] In *Rutan*, the Supreme Court held, *inter alia*, that an employee's allegation that she was denied a promotion because of her political affiliation stated a claim for violation of her First Amendment rights of freedom of association and freedom of speech. *Id.* at 75-76; *see also Elrod*, 427 U.S. at 369-70 (noting that "patronage is a very effective impediment to the associational and speech freedoms which are essential to a meaningful system of democratic government").

*Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991)). Based on the Supreme Court's jurisprudence regarding patronage practices in state government, it was clearly established in 2004 that denying Wireman a promotion because of her political affiliation violated her First Amendment rights. *See Rutan*, 497 U.S. at 74-75; *Branti*, 445 U.S at 513-15; *Elrod*, 427 U.S. at 360-64. No reasonable official could have believed that denying a promotion to an employee for that reason would not violate the employee's constitutional rights.

   2. *Procedural Due Process Rights*

Wireman claims that Fletcher and Beverage violated her procedural due process rights under the Fourteenth Amendment.[3] Therefore, Wireman asserts that Fletcher and Beverage could not deny her a promotion to the Administrative Manager position without affording her due process.

Both Fletcher and Beverage assert that Wireman does not have a property right in a promotion to Administrative Manager. In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), the Supreme Court held that government employees with a protectable property interest in their jobs cannot be deprived of that property interest without due process. *Id.* at 538. Mere government

---

   [3] "Plaintiff herein has not asserted a substantive due process claim. Instead, the Plaintiff has asserted claims based in the First Amendment and the procedural due process elements of the Fourteenth Amendment." (Pl.'s Resp. to Beverage's Mot. to Dismiss 5.)

employment, however, does not give rise to a property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  Only when the employee is "'entitled' to continued employment" does government employment amount to a protected property interest.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 141 (6th Cir. 1997) (quoting *Roth*, 408 U.S. at 577).  The employee must be able to "point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.*  If the Court initially determines that Wireman has "a property interest entitled to due process protection," then the Court proceeds to the second step, determining what process is due.  *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004).

In *Williams v. Kentucky*, 24 F.3d 1526 (6th Cir. 1994), the Sixth Circuit discussed whether the plaintiff had a protected property interest in her public employment:

> The Kentucky statutory scheme creates a property interest in continued employment for employees such as Williams. A Kentucky statute provides that "[a] classified employee with status shall not be dismissed, demoted, suspended, or otherwise penalized except for cause." Ky. Rev. Stat. Ann. § 18A.095(1). Williams was in the classified service and she had "status." Therefore, Williams could not be demoted without cause, and accordingly she had a protected property interest in her job as Field Office Manager.

*Id.* at 1538 (footnote omitted). Unlike the employee in *Williams*, Wireman has not provided any statutory support for the argument that she has a property interest in either her continued employment

12

or a promotion that falls within the protection of the Due Process clause of the Constitution. Therefore, her claim that the defendants violated her due process rights must be dismissed.

*C. Statute of Limitations*

Despite Wireman's successful efforts to state certain claims against Fletcher and Beverage — her claim for prospective injunctive relief against the defendants in their official capacities and her claim against the defendants in their individual capacities for violating her First Amendment rights — she cannot overcome the defendants' argument that her complaint must be dismissed in its entirety because she filed all of her claims outside of the statute of limitations period.

The duration of the statute of limitations for § 1983 actions is governed by state law, and federal standards govern when the statute begins to run. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Under Kentucky law, there is a one year statute of limitations for § 1983 actions. *See* KRS § 413.140(1)(a); *Shamaeizadeh v. Cunigan*, 182 F.3d 391, 394 (6th Cir. 1999); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). Under federal law, in determining when that one year period begins to run, "the proper focus is on the time of the discriminatory act, not the point at which the consequences of the act become painful." *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981).

Wireman alleges that the defendants engaged in an illegal act

by failing to promote her because of her political affiliation. She states in her complaint that she was notified in September or October of 2004 that she had not received the promotion. Wireman filed her complaint in this case more than a year later on February 9, 2006.

Wireman complains that the true reason why she was denied her promotion was fraudulently concealed from her. Under the doctrine of fraudulent concealment, if a defendant conceals from the plaintiff the existence of a cause of action, the statute of limitations will be tolled. In order to toll the statute, the plaintiff must prove that (1) the defendant concealed the conduct that constitutes the cause of action; (2) the defendant's concealment prevented the plaintiff from discovering the cause of action within the limitations period; and (3) until discovery, the plaintiff exercised due diligence in trying to find out about the cause of action. *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1335-36 (6th Cir. 1995); *Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1001-02 (6th Cir. 1994). Finally, tolling on the basis of fraudulent concealment is to be narrowly applied. *Hill*, 65 F.3d at 1336.

In *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975), the Sixth Circuit denied tolling of the statute of limitations when the plaintiff did not show that it had diligently pursued its cause of action and because congressional hearings and

press coverage should have alerted the plaintiff to its claim. Similarly, Wireman has not shown that the defendants' concealment prevented her from discovering her cause of action by October of 2005. Furthermore, Wireman has not shown that she exercised due diligence in trying to find out about her cause of action. She had until September or October of 2005, a year after she was notified that she would not receive the promotion, to file her claim.

Wireman argues that she did not become aware of the "real reason" why she was not given the promotion until January of 2006 when the *Lexington Herald-Leader* and the *Louisville Courier-Journal* published articles about a "package deal" entered into between the defendants to give a political supporter the position sought by Wireman. The *Hill* court discussed how the time limitation begins to run from the date the plaintiff knew of the alleged discriminatory act, not, as Wireman alleges, when the plaintiff knew of the defendant's motives for the act:

> Equitable tolling through fraudulent concealment is not warranted where a petitioner is aware of all the essential facts constituting discriminatory treatment but lacks direct knowledge or evidence of the defendant's subjective discriminatory motive. The critical question is not whether concealment of motives alone constitutes fraudulent concealment, but whether the defendant's alleged fraudulent conduct concealed from the plaintiff facts respecting the accrual or merits of the plaintiff's claim.

*Hill*, 65 F.3d at 1337 (citation omitted).

As early as May 2005, news coverage began to circulate

15

regarding the Fletcher administration's hiring practices.[4] In July and August of 2005, the *Lexington Herald-Leader* published articles specifically mentioning Billy Montgomery's promotion in 2004 to the position that Wireman had sought.[5] Moreover, in September 2005, two of Fletcher's former aides were indicted for, among other things, conspiring with Defendant Beverage "to appoint Billy Montgomery as highway district administrative manager in a Breathitt County office."[6] Unlike other civil rights plaintiffs, Wireman had the benefit of statewide and occasionally regional and national press coverage[7] reporting on a government scandal and a

---

[4] *See* Jack Brammer, *Investigator Says Politics Got Him Fired*, Lexington Herald-Leader, May 20, 2005, at A9; *Partisan or Proper*, Cincinnati Post, May 19, 2005, at K1.

[5] *See, e.g.*, Ryan Alessi and Jack Brammer, *Fletcher Promised Road Job, Notes Say Records Show Micromanaging in Jackson Manager's Position*, Lexington Herald-Leader, Aug. 18, 2005, at A1 ("All the drama was over the road department's administrative manager position in Jackson — which, among other things, handles personnel decisions for a district that covers 10 counties."); Jack Brammer and Ryan Alessi, *Fletcher Staffer*, *2 Transportation Officials Named*, Lexington Herald-Leader, July 7, 2005, at A1 ("Promotion of Billy Montgomery to administrative manager in the Jackson highway district in fall 2004."); Ryan Alessi and Jack Brammer, *Republicans Wanted State Jobs Made Personnel Key Issues*, Lexington Herald-Leader, July 2, 2005, at B1 ("Groves inquired about an administrative merit position in the Jackson regional road department after three Republican county judges called to recommend Billy Montgomery, who says he's a distant cousin of the governor.").

[6] Jack Brammer and Ryan Alessi, *2 Ex-Aides to Fletcher Indicted*, Lexington Herald-Leader, Oct. 1, 2005, at A1.

[7] *See, e.g.*, *Kentucky Governor Pardons Aides Facing Charges*, N.Y. Times, Aug. 30, 2005, at A10; *National Briefing South: Kentucky: State Officials Indicted*, N.Y. Times, July 12, 2005, at

criminal investigation to alert her to a possible cause of action related to her loss of a promotion.

Additionally, unlike the plaintiff in the case cited by Wireman, who "had no reason to know or suspect that [one surgeon] had left a foreign object in her body until [another surgeon subsequently] removed the object," Wireman had reason to know of her injury. *Wiseman v. Alliant Hosps., Inc.* 37 S.W.3d 709, 711 (Ky. 2000). The defendants she named in her complaint as involved in the decision to deny her a promotion to Administrative Manager were the subjects of extensive media coverage throughout the summer and fall of 2005, coverage that specifically mentioned that position and their roles in suspect hiring practices. Also unlike the plaintiff in *Wiseman*, who consulted several physicians to uncover the source of her physical pain after surgery, Wireman has not provided any evidence that she diligently attempted to find out about her cause of action. *See id.* at 711-12.

Reviewing Wireman's claim of fraudulent concealment, the Court cannot ignore how the media covered the hiring scandal and specifically reported about the person who received the promotion Wireman sought and the people who allegedly participated in the decision to hire Montgomery well before the one year statute of limitations period ran. Wireman has not shown that Fletcher or Beverage engaged in fraudulent conduct that concealed from her

---

A14.

facts respecting the accrual or merits of her claim or that their conduct prevented her from discovering her cause of action within the limitations period. Wireman has not met her burden of pleading fraudulent concealment. *See Hill*, 65 F.3d at 1336.

Wireman failed to file her § 1983 claims within the one year statute of limitations period; therefore, her complaint must be dismissed.

### IV. CONCLUSION

Accordingly, and based on the foregoing reasons, **IT IS ORDERED**:

(1) That the Transportation Cabinet's motion to dismiss [Record No. 12] be, and the same hereby is, **GRANTED**;

(2) That Fletcher's motion to dismiss [Record No. 13] be, and the same hereby is, **GRANTED**;

(3) That Beverage's motion to dismiss [Record No. 20] be, and the same hereby is, **GRANTED**; and

(4) That Wireman's claims be, and the same hereby are, **DISMISSED WITH PREJUDICE.**

This the 20th day of December, 2006.



Signed By:
*Joseph M. Hood*
United States District Judge